No. 12,775.

CARSON *v.* BRADFORD ET AL.

(15 P. [2d] 977)

Decided October 10, 1932. Rehearing denied November 14, 1932.

Mr. JAMES H. TELLER, Mr. SHRADER P. HOWELL, for plaintiff in error.

Messrs. LEWIS & GRANT, Mr. F. W. SANBORN, JR., Mr. J. R. HARRIS, Mr. WILBUR F. DENIOUS, Mr. HUDSON MOORE, Mr. DAYTON DENIOUS, for defendants in error.

*In Department.*

MR. JUSTICE ALTER delivered the opinion of the court.

J. HARRY Carson, plaintiff in error, will hereinafter be referred to as plaintiff, and Rollie W. Bradford, Erle O. Kistler and the Bradford-Robinson Printing Company, a corporation, defendants in error, will be referred to as defendants, or as Bradford, Kistler or the printing company. Plaintiff brought an action to recover a money judgment against defendants; defendants' demurrer to plaintiff's amended complaint was sustained; plaintiff

elected to stand upon his amended complaint and thereupon judgment was rendered in favor of defendants. Plaintiff prosecutes this writ assigning as error the sustaining of the demurrer and rendering judgment thereon

The amended complaint alleged that on November 25, 1925, plaintiff and the Carson Press Company, a corporation, made, executed and delivered their two promissory notes to the Home Finance Company, a corporation, and to secure the prompt payment thereof, executed their chattel mortgage, and, as further security therefor, plaintiff executed and delivered to the Home Finance Company his certain deed of trust upon property belonging to him in the City and County of Denver, which property was then subject to a first deed of trust, to secure the payment of plaintiff's note for $18,000. On March 1, 1928, by virtue of a certain execution issued out of the district court, those chattels of plaintiff and the Carson Press Company, given as security to the Home Finance Company, together with other chattels, were sold at public sale to the printing company, subject to the lien of the Home Finance Company's chattel mortgage. On or about March 1, 1928, the printing company offered to pay the Home Finance Company the balance due it on the two notes of plaintiff and the Carson Press Company, provided the Home Finance Company would endorse the two notes in blank, rather than marking them paid and cancelled, but this the Home Finance Company refused to do because it, as agent for plaintiff, had some prospective purchasers for the real estate encumbered by deeds of trust, and in event of a sale thereof, would be entitled to a commission of $600 from plaintiff. Thereafter, and on March 8, 1928, the printing company paid the Home Finance Company the balance due upon the two promissory notes of plaintiff and the Carson Press Company, and, in addition thereto, the sum of $600, this last mentioned sum being the amount of commission the Home Finance Company would be entitled to receive from plaintiff in event a sale of the encumbered real estate

was consummated through its efforts, and, upon payment of this amount, the Home Finance Company endorsed the two secured promissory notes in blank, and delivered them, together with the deed of trust and chattel mortgage securing their payment, to the printing company. It is further alleged that the Home Finance Company had prospective purchasers for the real estate, and, in event of sale, the price would be in excess of all encumbrances thereon, and that the real estate was reasonably worth the sum of $45,000. On April 3, 1928, the owner of the first deed of trust on the real estate caused the same to be foreclosed, and a certificate of purchase was issued, and, on the same day, Kistler, who, it was alleged, had, in some manner, secured the two promissory notes from the printing company without consideration therefor, representing himself to be the owner thereof, and that there was un unpaid balance of $3,823.49 due thereon, redeemed from the foreclosure sale by paying the sum of $19,795 to the public trustee for the use of the holder of the certificate of purchase, and, on April 4, 1928, a certificate of redemption was issued Kistler.

The complaint alleged that the offer made by the printing company to the Home Finance Company for the endorsement of the two promissory notes was pursuant to a "fraudulent plan and scheme theretofore formed by the said several defendants herein, to obtain said notes from said Finance Company uncancelled, and to use them in the manner hereinafter stated, and thus recover the amount so paid as aforesaid on said notes." Further, it is alleged "That on April 3, 1928, defendant Erle O. Kistler, planning and confederating with said defendants, Bradford-Robinson Printing Company and said Rollie W. Bradford to defraud the plaintiff in accordance with a plan theretofore formed by representing to said public trustee that he was the owner and holder of said two promissory notes secured by a deed of trust, as aforesaid, and that there was due and unpaid on said notes, the sum of Three Thousand, Eight Hundred, Twenty-

three and 49/100 Dollars ($3,823.49), did then and there make such false and fraudulent representations to said public trustee, and thereby induced said public trustee to believe and find that he, the said Erle O. Kistler, was entitled to redeem said real estate from said foreclosure sale," * * *. The Butler Paper Company, being an encumbrancer subsequent to the $18,000 deed of trust as well as the one held by Kistler, and being desirous of redeeming from the original foreclosure and Kistler redemption thereof, and "having full knowledge of all the matters hereinbefore stated, and after due consideration of its rights in the premises, redeemed said real estate, and paid to the said public trustee, in such redemption, the sum of $24,536.94, which said sum was thereupon paid by said public trustee to defendant Erle O. Kistler, who thereby received the full sum paid by him in redemption of said real estate, as aforesaid, together with the sum of Three Thousand, Eight Hundred, Twenty-three and 49/100 Dollars, the amount falsely and fraudulently represented as aforesaid to said public trustee as due and unpaid on said two promissory notes at the time of said redemption, which said sum was obtained by said Kistler for the use and benefit of himself and the other defendants herein." Further, the complaint alleged: "That because of the fraudulent acts aforesaid, defendant Erle O. Kistler had, in equity and good conscience, no right to receive the said sum of $3,823.49 by him received on said redemption of said real estate by said Butler Paper Company, and has now no right to withhold the same from plaintiff herein to whom in equity it belongs." Further, the complaint alleged: "That in committing the fraudulent acts aforesaid, defendant, Erle O. Kistler, was acting for the other defendants, and in accordance with a fraudulent plan which they had theretofore formed with him."

We have set forth every allegation in the complaint respecting fraudulent plans and scheme, and have quoted in detail therefrom, in order that plaintiff's position may

be clearly understood. Plaintiff did not offer to redeem from the foreclosure sale or from the redemptions thereunder, as provided in chapter 106, C. L. 1921.

■ Plaintiff's contention is thus stated: "That when the defendants paid to the Finance Company the amount due on the chattel mortgage notes, they being already the owners of the mortgaged property, subject only to this encumbrance, the lien of the chattel mortgage was merged in the ownership title, and the notes were paid by operation of law." It is then argued that since the notes were paid by operation of law, the deed of trust should have been released, and Kistler, with the notes in his possession which were secured by this deed of trust, could not be a subsequent encumbrancer entitled to redeem from the foreclosure sale. That the Kistler redemption thus effected under fraudulent representation made by him to the public trustee increased unlawfully the amount due to redeem from his redemption by $3,823.49; however, the Butler Paper Company, according to the allegations of the complaint had "full knowledge of all the matters hereinbefore stated, and after due consideration of its rights in the premises," and it did redeem from Kistler's certificate. If the allegations of the complaint are correctly understood by us, the Butler Paper Company wilfully, knowingly and voluntarily paid the public trustee the sum of $3,823.49 more than could have been legally demanded for redemption from the Kistler redemption. The complaint is silent as to the date of the Butler Paper Company's redemption, but, if it occurred after the expiration of the period allowed by statute for plaintiff's redemption, certainly plaintiff could not maintain this suit, because all his rights in the premises would have ceased, except only the right of possession for the nine months period fixed by statute. *Ross v. Nichols*, 25 Colo. App. 409, 138 Pac. 1013; *Roose v. Gove*, 32 Colo. 522, 77 Pac. 246; *Jenkins v. Gold Dollar Co.*, 27 Colo. App. 247, 149 Pac. 269; *Lane v. Morris*, 77 Colo. 343, 237 Pac. 154. Here, plaintiff without any attempt what-

ever to protect his equity of redemption, seeks a judgment requiring Kistler to pay him the sum of $3,823.49, which the complaint alleged was voluntarily and knowingly paid Kistler by the Butler Paper Company. It is alleged that Kistler had no right to demand the payment of $3,823.49 from the Butler Paper Company, and of this the Butler Paper Company was well aware; nevertheless, it paid it. The Butler Paper Company's unprecedented generosity, if it was such, to Kistler furnishes neither equitable nor legal grounds for plaintiff's complaint. In order to find that plaintiff is damaged by this action of the Butler Paper Company and Kistler, in their course of dealings with plaintiff's encumbered property, we must discover equitable principles as yet unannounced. We assume, as we must, the truth of every allegation in plaintiff's complaint, and yet we fail to see where he is damaged.

Our disposition of this question makes it unnecessary for us to determine other interesting questions presented and argued.

Judgment affirmed.

MR. CHIEF JUSTICE ADAMS and MR. JUSTICE CAMPBELL concur.